[Civ. No. 30559. Fourth Dist., Div. Three. Mar. 27, 1985.]

WAYNE McMANIGAL, Plaintiff and Appellant, v.
CITY OF SEAL BEACH, Defendant and Respondent.

**COUNSEL**

Silver & Kreisler, Silver, Kreisler, Goldwasser & Shaeffer, Stephen H. Silver, William J. Hadden and Susan Silver for Plaintiff and Appellant.

Richards, Watson, Dreyfuss & Gershon, Gregory W. Stepanicich, City Attorney, Teresa R. Tracy, Ronald F. Garrity and Stacy T. Picascia for Defendant and Respondent.

**OPINION**

**SONENSHINE, J.**—Appellant asks us to consider whether he was entitled to an administrative appeal after he was transferred from motorcycle to patrol officer with a reduction in pay. We conclude he was.

Appellant Wayne McManigal is a police officer for the city of Seal Beach. In June 1976 his duties changed from patrol officer to motorcycle officer and he received an additional 5 percent "skill" pay.

From the time of this assignment to the end of 1978, McManigal's supervisor generally gave him satisfactory evaluations. However, for the period of January 1, 1979 through June 30, 1979, McManigal was rated as "needing improvement." The written evaluation criticized the quantity of work performed, noting McManigal was below average in "statistics"[1] for the first half of 1979. It also noted McManigal loved his work but sometimes "bent the rules," giving him more time to ride his motorcycle. Finally, the evaluations said his attitude and judgment were slipping due to "tunnel vision" which led him to desire only to ride his motorcycle. McManigal's supervisor said if his attitude did not change, a transfer would be recommended.

---

[1] This is presumably a reference to the number of citations issued and arrests made.

On September 11, 1979, McManigal's supervisor sent a memorandum to the division commander reiterating the perceived deterioration of McManigal's "aptitude for a motorcycle assignment." It recommended McManigal's reassignment to a patrol car at the earliest convenient date. The supervisor and division commander met and agreed McManigal would be transferred. A notice of transfer dated September 19, 1979, issued and on October 1, 1979, McManigal was reassigned to a patrol car losing the 5 percent "skill" pay he received as a motorcycle officer. McManigal met with his supervisor and the division commander requesting they change their minds, but the transfer order remained in effect.

In May 1981 McManigal contacted an attorney. On July 23, 1981, McManigal and his attorney met with the chief of police[2] and a representative of the city attorney but no resolution was reached.

McManigal's counsel sent letters requesting a written statement of reasons for the transfer and review of the action taken. The Civil Service Board denied a hearing because "the matter did not involve disciplinary action [and thus] it did not fall under the jurisdiction of the Civil Service Board. . . ." On September 10, 1982, following two California Supreme Court opinions we discuss in detail *post*, McManigal's attorney again requested a statement of reasons for the transfer and a full hearing before the Civil Service Board. These requests were denied.

McManigal petitioned the superior court for a writ of mandate contending, among other things, he was entitled to an administrative appeal of the transfer. The trial court denied the writ, concluding the transfer was not disciplinary or punitive in nature and therefore no administrative appeal was required by the Public Safety Officers Procedural Bill of Rights Act. (Gov. Code, §§ 3300-3311.)[3]

I

"The Bill of Rights Act sets forth a number of basic rights and protections which must be accorded individual public safety officers by the public agencies which employ them. One of the basic protections is the right to an administrative appeal of punitive actions. Section 3304, subdivision (b), provides that 'No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency without providing the public safety officer with an opportunity for administrative appeal.'" (*White*

---

[2]The aforementioned division commander who had transferred McManigal had become the chief of police.

[3]All statutory references are to the Government Code unless otherwise specified.

v. *County of Sacramento* (1982) 31 Cal.3d 676, 679 [183 Cal.Rptr. 520, 646 P.2d 191], fn. omitted.) "[S]ection 3303 . . . defines 'punitive action' as 'any action which may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment.'" (*Ibid.*)

Our Supreme Court addressed the administrative appeal issue in *White* v. *County of Sacramento, supra,* 31 Cal.3d 676 and *Baggett* v. *Gates* (1982) 32 Cal.3d 128 [185 Cal.Rptr. 232, 649 P.2d 874]. White was a sheriff's deputy who was reassigned from a detective to patrol officer as a result of deficient performance. He lost both rank and a 5 percent special pay allowance.

■ The court indicated, "the provisions of the State Civil Service Act [see *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 (124 Cal.Rptr. 14, 539 P.2d 774)] strongly support the conclusion that the Legislature intended, in the Bill of Rights Act, to provide the right of administrative appeal to a peace officer against whom disciplinary action is taken, and that the Legislature viewed 'dismissals,' 'demotions,' 'suspensions,' 'reductions in salary' and 'written reprimands' to be per se disciplinary in nature. A transfer, however, is 'disciplinary' in nature only if imposed 'for purposes of punishment.'" (*White* v. *County of Sacramento, supra,* 31 Cal.3d 676, 682-683, fn. omitted.) "Accordingly, this court holds that a decision to reassign a peace officer to a lower paying position is per se disciplinary, or punitive in nature, and that the officer therefore must be accorded the 'opportunity for [an] administrative appeal.' (§ 3304, subd. (b).)" (*Id.,* at pp. 683-684, fn. omitted.)

In *Baggett* v. *Gates, supra,* 32 Cal.3d 128, police officers were also reassigned to lower paying positions[4] pursuant to departmental findings their performance had been negligent and unsatisfactory. ■ First, the Supreme Court held the Bill of Rights Act applies to California charter cities (see Cal. Const., art. XI, § 5). (*Baggett* v. *Gates, supra,* at pp. 135-140.) Seal Beach is a charter city; on the strength of *Baggett* the Act applies to Seal Beach. The court reiterated its holding in *White*. "'[A] decision to reassign a peace officer to a lower paying position is per se disciplinary, or punitive in nature . . . .' [Citation.]" (*Baggett* v. *Gates, supra,* at p. 141.)

In our case, Seal Beach raises a defense grounded in semantics. The city maintains McManigal retained the same rank and his *salary* was not reduced

[4]The officers worked in the firearms and explosives unit and were each ranked as a police officer III, denoting a specialized position involving increased responsibilities or calling for special qualifications. This was known as an "advanced pay grade assignment." The officers were reassigned to police officer II positions. This is a position for officers with one and one-half years of service and has a lower salary.

by the transfer. Rather, he merely lost hazard pay which was not part of his "salary," as that term is used in section 3303. The superior court accepted this argument, distinguishing *White* and *Baggett* by reasoning the base salary for McManigal remained the same and he lost only "premium pay."

■ The trial court erred. It is true McManigal did not lose any rank, which distinguishes the case from *White* and *Baggett*. But this is a distinction without a difference. Both of those cases make it very clear a transfer to a *"lower paying position"* is per se disciplinary and entitles the peace officer to an administrative appeal. There can be no question McManigal was transferred to a lower paying position. The particular salary structure and nomenclature used by the city cannot be determinative. If, as here, the officer is paid less, he or she is entitled to an administrative appeal. McManigal's retention of his rank does not change this. Section 3303 lists "demotion" as a separate disciplinary measure requiring an administrative appeal. And the fact Seal Beach placed McManigal in a lower paying position without reducing his rank cannot serve to circumvent the requirements of the act.

"[T]his construction of sections 3303 and 3304, subdivision (b) accords with the express purpose of the Bill of Rights Act. Section 3301 declares that the acts 'rights and protections' are afforded peace officers in order to assure the 'maintenance of stable employer-employee relations,' and thus to secure 'effective law enforcement . . . services' for 'all people of the state.' It is evident that the more widely available the opportunity to appeal a decision resulting in disadvantage, harm, loss or hardship, the more ' "meaningful [the] hedge against erroneous action." ' [Citation.] [¶] Erroneous action can only foster disharmony, adversely affect discipline and morale in the workplace, and, thus, ultimately impair employer-employee relations and the effectiveness of law enforcement services. With regard to the availability of the right of administrative appeal, the interpretation to which the ordinary rules of statutory construction leads is also the one which is most consonant with the express purpose of the Bill of Rights Act." (*White* v. *County of Sacramento, supra,* 31 Cal.3d 676, 683, fn. omitted.)

In *Baggett,* 32 Cal.3d 128, the court " 'looking through form to substance,' " concluded the reassignments were for purposes of punishment. (*Id.,* at p. 141.) We conclude McManigal's transfer was similar to that in *White*—a result of his perceived deficient performance. The city's position this was simply a routine transfer is untenable. The record makes it clear McManigal's transfer was the result of his supervisor's evaluation of his performance.

*Hopson* v. *City of Los Angeles* (1983) 139 Cal.App.3d 347 [188 Cal.Rptr. 689] is also instructive. There comments criticizing the officers' conduct in a shooting were placed in their personnel files. The court concluded this was punitive action, although no discipline was imposed, because "placing this Report into the personnel files will result in disadvantage, harm, loss or hardship. [Citation.]" *(Id.,* at p. 354.) The court relied on *White* and *Baggett.* Put another way, "punitive action" is construed broadly in this context. The issue is whether there was a detriment to the officer. Here, as in *Hopson,* the action was detrimental to McManigal.

For all these reasons, we hold McManigal's transfer was an assignment to a lower paying position within the meaning of *White* and *Baggett.* As a result, he was entitled to an administrative appeal under section 3304, subdivision (b).

## II

As a fallback position, Seal Beach argues *White* and *Baggett* should not be applied retroactively. Again we disagree.

█ The issue of retroactivity was exhaustively examined recently by our Supreme Court in *People* v. *Guerra* (1984) 37 Cal.3d 385 [208 Cal.Rptr. 162, 690 P.2d 635]. " 'As a rule, judicial decisions apply "retroactively." [Citation.] Indeed, a legal system based on precedent has a built-in presumption of retroactivity.' [Citation.]" *(Id.,* at p. 399.)

"To determine whether a decision should be given retroactive effect, the California courts first undertake a threshold inquiry: does the decision establish a new rule of law? If it does, the new rule may or may not be retroactive, . . .; but if it does not, 'no question of retroactivity arises' because there is no material change in the law. [Citations.]" *(Ibid.)* Among the examples recited in *Guerra* of decisions that do not establish a new rule of law for purposes of retroactivity are those "in which [the court] gave effect to a statutory rule that the courts had theretofore misconstrued [citation] or had not definitively addressed [citation] . . . ." *(Id.,* at p. 399, fn. 13.)

The Supreme Court also discussed the retroactivity of opinions interpreting statutes in *People* v. *Garcia* (1984) 36 Cal.3d 539 [204 Cal.Rptr. 671, 683 P.2d 670]. "Whenever a decision undertakes to vindicate the original meaning of an enactment, putting into effect the policy intended from its inception, retroactive application is essential to accomplish that aim. [Citation.] If in addition, . . . the decision represents the first authoritative construction of the enactment, no history of extended and justified reliances

upon a contrary interpretation will arise to argue against retroactivity." (*Id.*, at p. 549.)

The decisions in *White* and *Baggett* do not establish a new rule of law; they vindicate the original meaning of an enactment. (*People* v. *Garcia, supra,* 36 Cal.3d 539, 549.) Even assuming earlier Court of Appeal opinions gave a different construction to the applicable portions of the act, as the city contends, prior misconstruction of a statute by the courts does not prevent the retroactive application of the Supreme Court's authoritative interpretation. (*People* v. *Guerra, supra,* 37 Cal.3d 385, 399, fn. 13; see also *People* v. *Mutch* (1971) 4 Cal.3d 389, 394 [93 Cal.Rptr. 721, 482 P.2d 633].) Finally, the city's argument about the deliterious impact of retroactivity is beside the point; the balancing process suggested by the city (see *People* v. *Guerra, supra,* at pp. 399-406) does not even occur unless a decision establishes a new rule of law. ▪ ▪▪▪ Since *White* and *Baggett* do not, they are fully retroactive.[5]

## III

The parties ask us to address several other issues. McManigal argues he was entitled to a hearing before the Seal Beach Civil Service Board under the provisions of the city charter, he was entitled to advance written notice and an administrative hearing under the due process clause of the California Constitution and the actions actually taken did not comply with the obligation to provide an administrative appeal. In addition, McManigal asks us to pass on the issues of attorney's fees in the underlying lawsuit and award him back pay. In turn, the city argues the action is barred by the statute of limitations and laches.

However, the trial court did not rule or make findings on any of these issues. ▪ " 'It is familiar appellate practice to remand causes for further proceedings without deciding the merits, where justice demands that course in order that some defect in the record may be supplied. Such a remand may be made to permit further evidence to be taken or additional findings to be made upon essential points.' [Citation.]" (*Pandol & Sons* v. *Agricultural Labor Relations Bd.* (1979) 98 Cal.App.3d 580, 591 [159 Cal.Rptr. 584]; see also *Burkhart* v. *Department of Motor Vehicles* (1981) 124 Cal.App.3d 99, 113 [177 Cal.Rptr. 175].)

---

[5]In addition, with respect to *Baggett*'s holding the Bill of Rights Act applies to charter cities, we note it has long been held matters of statewide concern are binding on charter cities and counties. (See *Los Angeles County Civil Service Com.* v. *Superior Court* (1978) 23 Cal.3d 55 [151 Cal.Rptr. 547, 588 P.2d 249]; *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56 [81 Cal.Rptr. 465, 460 P.2d 137]; *Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276 [32 Cal.Rptr. 830, 384 P.2d 158].) We see no reason why this aspect of *Baggett* calls for the prospective application of that case or *White*.

The judgment is reversed and remanded for further proceedings consistent with the views expressed in this opinion.

Trotter, P. J., and Wallin, J., concurred.