[No. G005382. Fourth Dist., Div. Three. Oct. 31, 1988.]

ORANGE COUNTY EMPLOYEES ASSOCIATION et al., Plaintiffs and Appellants, v.
COUNTY OF ORANGE et al., Defendants and Respondents.

**COUNSEL**

Kathleen Sage for Plaintiffs and Appellants.

Adrian Kuyper, County Counsel, and Terry C. Andrus, Deputy County Counsel, for Defendants and Respondents.

## OPINION

SILLS, J.*—We are asked to determine whether a public safety officer's transfer was punitive within the meaning of the Public Safety Officers Procedural Bill of Rights Act and conclude that it was not.[1]

Most of the facts are not contested. Vaughn Roley was the director of Los Pinos Forestry Camp, a county facility for delinquent boys. After 16 years in that position, he was transferred to the post of director of juvenile court services. His compensation in all respects including benefits remained the same. Shortly after his transfer, he received a pay raise.

The table of organization of the Orange County Probation Department is headed by the chief probation officer, Dr. Michael Schumaker. Under him are three chief deputy probation officers. The next tier of management consist of 12 division director positions. All are the same level management positions. Each of these directors reports directly to one of the three chief deputies.

Prior to the transfer, a series of events occurred at Los Pinos which caused Dr. Schumaker considerable concern about Roley's performance of his duties. One of these events involved a part-time employee at Los Pinos who complained to the Orange County Affirmative Action Committee that a subordinate of Roley's had sexually harassed her. Dr. Schumaker was bothered by the fact that he had not learned of the filing of the complaint from his staff and by what he concluded was a lack of thoroughness by Roley in conducting an investigation of the matter. Roley's immediate supervisor placed a critical memorandum in his personnel file about how he handled the situation.

Other incidents occurred at Los Pinos during the months prior to the transfer which also caused Dr. Schumaker ". . . concerns over how effectively Mr. Roley was managing the operations at Los Pinos." None of these incidents resulted in any disciplinary action against Roley. The parties do not dispute the fact, however, that in addition to the way Roley handled the sexual harassment complaint, his management style in handling certain

---

*Assigned by the Chairperson of the Judicial Council.

[1] Government Code section 3300, et seq. is commonly referred to as the Public Safety Officers Procedural Bill of Rights Act. Section 3303 provides in pertinent part: "For the purpose of this chapter, punitive action is defined as any action which may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." Section 3304, subd. (b) provides: "No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency without providing the public safety officer with an opportunity for administrative appeal."

trailer rentals, the disposal of cooking grease along an access road and use of the facility by a boys' club all caused Dr. Schumaker to question whether he had the right person in charge of Los Pinos and whether a change should be made.

After the transfer, Roley requested a hearing per section 3304, subd. (b) of the act. He contended that his transfer was "punitive" within the meaning of Government Code section 3303—that the transfer was "for purposes of punishment." Dr. Schumaker responded to the request by advising Roley that he had no recourse under the act since the transfer was not punitive. Dr. Schumaker pointed out that division directors are transferred from one position to another as a matter of routine practice. He advised Roley, however, that he could avail himself of the county grievance procedure and for purposes of his complaint, he would waive the internal steps and refer the matter to the county personnel director for final decision.[2]

Roley then filed a "grievance" and also wrote Orange County Personnel Director Russell C. Patton requesting an administrative appeal. Patton replied by advising Roley that he would meet with him " . . . to discuss and hear your appeal as a peace officer and to address your grievance." A meeting was held, Patton permitted Roley to present his version of the events which he perceived led to his transfer, and a week later Patton made his decision—the transfer would stand but the critical memo about Roley's handling of the sexual harassment incident would be removed from his personnel file.

Roley then filed a petition for a writ of mandate requesting that the court require the county afford Roley the opportunity for a full trial type administrative appeal regarding his recent transfer.

---

[2]Following are excerpts from Dr. Schumaker's letter which the trial court considered in reaching its decision: "In your letter, you indicated that you believe that you have a right to an administrative appeal under the Peace Officer Bill of Rights concerning this transfer. My response is that no discipline was anticipated by this change of assignment and upon its accomplishment, no discipline will have taken place. All Division Director positions in the Probation Department are at an M-6 level. There is no one position that is favored above the others as far as rank, status or salary are concerned (with the exception of the Juvenile Hall bonus). All Division Director positions are critical to the operation of this Department. A transfer from one position to another is not a disciplinary measure and is therefore not covered by the Peace Officer Bill of Rights. [¶] Rotation of Supervisors, Division Directors and Chief Deputies in this Department has been an established practice for many years. Most, if not all, Division Directors have been rotated among the positions in this Department at least once, and in some cases twice, since I assumed this office. I am therefore directing that your reassignment is to take place effective May 23, 1986. This does not however preclude you from using the grievance procedure as outlined in the Personnel and Salary Resolution to express your complaint/grievance. For the purpose of resolution of this particular matter, I will agree to waive the internal steps and refer the matter to the County Personnel Director for a final decision."

The trial court in denying the writ concluded: "Based on the evidence that's before the court, the court must conclude that it is not a punitive transfer. . . ." Neither party requested a statement of decision.

Roley appeals contending under case law, such a transfer was for "purpose of punishment," and as a result, he is entitled to an administrative hearing subject to judicial review. We disagree and uphold the decision below.

At the outset, we note that both parties in their briefs concede that "the sufficiency of the evidence is reviewed under the substantial evidence test." Neither discuss the nature of the test, however, and appellant reargues the evidence at some length in his brief.

We are bound by established rules of appellate review. As even appellant points out in his brief, under the substantial evidence test, the court views the evidence in a light most favorable to the respondent. In other words, factual matters will be viewed most favorably to the prevailing party. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].) "*Where the evidence is in conflict, the appellate court will not disturb the verdict of the jury or the findings of the trial court.* The presumption being in favor of the judgment . . . the court must consider the evidence in the light *most favorable to the prevailing party,* giving him the benefit of *every reasonable inference,* and *resolving conflicts* in support of the judgment." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 278, p. 289.) An appellate court's ". . . power begins and ends with a determination as to whether there is *any* substantial evidence to support [the factual findings]; [it has] no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or *in the reasonable inferences that may be drawn therefrom.*" (*Overton* v. *Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 370 [210 P.2d 757], partial italics added.)

Before us are several undisputed facts which were before the trier. The transfer did not entail any financial loss—no reduction in pay or decrease in benefits. Most directors at that level routinely had been transferred to another directorship. It appears from the record that Roley served in the Los Pinos directorship longer than any other director in the department. There was no disciplinary action of any type taken when the transfer occurred. The objectionable memorandum was removed from Roley's file. The trial court's conclusion—its inference that the transfer was not punitive—is most certainly supported by substantial evidence. A ". . .

reviewing court is without power to substitute its deductions for those of the trial court; . . ." (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

Appellants cite several cases in support of their position. All, however, involved some type of sanction imposed on the officer being transferred. In *Baggett* v. *Gates* (1982) 32 Cal.3d 128 [185 Cal.Rptr. 232, 649 P.2d 874], a peace officer was reassigned to a lower paying position; *White* v. *County of Sacramento* (1982) 31 Cal.3d 676 [183 Cal.Rptr. 520, 646 P.2d 191] involved a transfer to a lower paying position; and *McManigal* v. *City of Seal Beach* (1985) 166 Cal.App.3d 975 [212 Cal.Rptr. 733] concerned a reassignment that resulted in a loss of pay. *Hopson* v. *City of Los Angeles* (1983) 139 Cal.App.3d 347 [188 Cal.Rptr. 689] did not involve a transfer but dealt with whether a critical report placed in a police officer's personnel file constituted punitive action such that a full trial type administrative appeal hearing was required. *Doyle* v. *City of Chino* (1981) 117 Cal.App.3d 673 [172 Cal.Rptr. 844] involved a police chief who first had his pay cut and later was dismissed. Appellant has been able to cite no case where a transfer unaccompanied by other actions adverse to the officer was characterized as punitive.

In the instant case, appellant urges us to interpret the evidence differently than did the trial court and reach a different conclusion. The flaw in Roley's argument is revealed in the first page of his reply brief: "But Mr. Roley's transfer was punitive, since it was based on perceived deficient performance." ▮▮▮ Appellant assumes transfers based on performance deficiencies, whether perceived or real, are per se punitive. Deficiencies in performance are a fact of life. Right hand hitters sit on the bench against certain pitchers, some professors write better than they lecture, some judges are more temperamental with criminal cases than others. The manager, chancellor or presiding jurist must attempt to find the proper role for his personnel. Switching Casey from shortstop to second base because he can't throw to first as fast as Jones is not in and of itself a punitive transfer.

The trial judge weighed and considered this very issue when it observed: ". . . it appears to the court that there is a difference between a transfer to punish for a deficiency in performance, versus a transfer to compensate for a deficiency in performance. [¶] In other words, if a person is deficient in performance and they are transferred someplace else where that deficiency will not matter or is compensated for by the new assignment, that is not necessarily punitive. It can be just the opposite of punitive. [¶] And it is the view of the court that, among the various arguments that were made, which

the court is persuaded by, I think that there is no showing by the moving party satisfactory to convince me that this is [a] punitive transfer."

Based on the evidence before the trial court, we cannot disagree. The judgment is affirmed.

Sonenshine, Acting P. J., and Wallin, J., concurred.