[No. B112677. Second Dist., Div. Four. Sept. 30, 1997.]

CITY OF LOS ANGELES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MERINIO LABIO, Real Party in Interest.

## COUNSEL

James K. Hahn, City Attorney, Breton K. Lobner, Assistant City Attorney, Lynn Mayo and Flora Trostler, Deputy City Attorneys for Petitioner.

No appearance for Respondent.

Silver, Hadden & Silver and Susan Silver for Real Party in Interest.

## OPINION

**EPSTEIN, Acting P. J.**—The City of Los Angeles (City) seeks our review of a trial court order excluding statements made by a police officer who was not informed that he was under investigation nor told the nature of the investigation. We conclude that the officer is protected under the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3303 et seq., hereafter the Act; further code citations are to the Government Code unless otherwise indicated.) We also conclude that the trial court's order excluding the officer's statements in response to questioning during the City's case-in-chief was not an abuse of discretion. We modify the order, however, to allow introduction of the statements for impeachment.

### FACTUAL AND PROCEDURAL SUMMARY

Officer Merinio Labio, real party in interest, was on duty as a Los Angeles airport police officer during the night of January 18, 1996, and the following

morning. Lieutenant Martinez was the watch commander on duty at the time. The airport police is an agency of the City. During this shift, a fatal traffic accident occurred on Imperial Highway.

Shortly after the accident, Lieutenant Martinez and Sergeant Hoffman stopped at Lucky's Donut Shop. The owner of the shop, Mr. Chau, told them he had seen a male Filipino officer drive past the accident scene in a marked police vehicle and, without stopping to render aid, the officer had proceeded to Dough Boy's Donut Shop. Shortly after this conversation, Lieutenant Martinez checked the deployment log to determine whether any officers on duty matched Mr. Chau's description. Officer Labio was the only Filipino officer on duty. Sergeant Hoffman then went to Dough Boy's and asked an employee there whether an officer had patronized the restaurant at the time of the accident. Sergeant Hoffman said he told this employee that he was trying to determine whether an officer had left a ticket book at the establishment. The employee confirmed that a male Filipino had been there at about the time of the accident. This information was related to Lieutenant Martinez who also spoke to Sergeant Montgomery, Officer Labio's immediate supervisor, to determine whether Officer Labio had permission to use a City vehicle. Lieutenant Martinez discovered that Officer Labio did not have permission to use a vehicle that evening and asked Sergeant Montgomery to write a report documenting that fact.

Later the same morning, a radio call was issued instructing Officer Labio to come to the watch commander's office. Officer Labio responded to the call. Upon Officer Labio's arrival, Lieutenant Martinez immediately began questioning him concerning his whereabouts and use of a City vehicle during his shift. Lieutenant Martinez also asked Officer Labio about the route he had taken in traveling to Dough Boy's. Sergeant Hoffman was present during this questioning.

Lieutenant Martinez had not informed Officer Labio that he was under investigation. Lieutenant Martinez did not give him *Miranda*[1] warnings or inform him of his rights under the Act.

When Lieutenant Martinez questioned Officer Labio, he knew that passing by the scene of the accident without stopping to render aid was a serious offense and that the officer could face disciplinary action if the allegation were sustained. Lieutenant Martinez testified that if passing by the scene of the accident were a felony, at the time he interviewed Officer Labio he would have had probable cause to take him in custody. No other officer was

---

[1] *Miranda* v. *Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].

interviewed by Lieutenant Martinez concerning his or her whereabouts at the time of the accident.

When Lieutenant Martinez questioned Officer Labio, he also realized the matter would have to be forwarded to the department's internal affairs division (IAD). Following the interview, Lieutenant Martinez filed a personnel complaint with the IAD.

Officer Labio was interviewed by IAD. Prior to his interview with IAD, he was fully informed of his rights under the Act. He was represented by counsel at this interview, and his counsel objected to introduction of statements made at the interview with Lieutenant Martinez. The basis of the objection was that Officer Labio had not been informed of his rights under the Act.

Officer Labio was terminated from his position effective June 14, 1996. Termination was based on allegations that he used a City vehicle without authorization, that he failed to stop at the scene of an accident, that he made an unauthorized detour to a doughnut shop, that his misconduct was reflected badly in the press, that he made false and misleading statements related to his actions on or about January 18, 1996 (i.e. at the interview with Lieutenant Martinez), and that he included false information in his daily field report.

Officer Labio requested an administrative hearing to review his termination. At the hearing he sought to exclude his statements made at the interrogation by Lieutenant Martinez on January 19, 1996, together with all evidence flowing from the questioning. The basis of that motion was Officer Labio's claim that Lieutenant Martinez had not advised him that he was under investigation, as required by section 3303, subdivision (c). The hearing officer ruled that he lacked jurisdiction to determine whether the evidence should be excluded. Following the procedure specified in section 3309.5, Officer Labio petitioned the superior court for relief. The court ultimately issued its order excluding all evidence related to the interview of Officer Labio on January 19, 1996. The City then petitioned for our review. We issued an alternative writ.

DISCUSSION

I

■ We granted an alternative writ in this case because the issue is of widespread public interest and because the trial court's order prevents

petitioner from presenting a substantial portion of its case by excluding all information obtained during Lieutenant Martinez's interview with Officer Labio. (See *Omaha Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1266, 1272 [258 Cal.Rptr. 66] [listing factors to consider in determining the propriety of an alternative writ].) Although generally an appeal is sufficient for relief, extraordinary relief is justified in this case in order to prevent substantial expenses from being imposed on the City and public in the event the City's arguments are entirely or substantially successful. (See *City of Glendale* v. *Superior Court* (1993) 18 Cal.App.4th 1768, 1777 [23 Cal.Rptr.2d 305]; *City of Oakland* v. *Superior Court* (1996) 45 Cal.App.4th 740, 750 [53 Cal.Rptr.2d 120].)

II

■ The Act provides procedural guarantees to public safety officers under investigation. (*Pasadena Police Officers Assn.* v. *City of Pasadena* (1990) 51 Cal.3d 564, 572 [273 Cal.Rptr. 584, 797 P.2d 608].) Police officers are included within the protected groups.[2] The purpose of the Act is to maintain " 'stable employer-employee relations[] between public safety employees and their employers.' " (*People* v. *Velez* (1983) 144 Cal.App.3d 558, 564 [192 Cal.Rptr. 686].) " '[T]he act is concerned primarily with affording individual police officers certain procedural rights during the course of proceedings which might lead to the imposition of penalties against them.' " (*Los Angeles Police Protective League* v. *City of Los Angeles* (1995) 35 Cal.App.4th 1535, 1540 [42 Cal.Rptr.2d 23], quoting *White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 681 [183 Cal.Rptr. 520, 646 P.2d 191].) While granting certain rights to police officers, the Act balances the interests of the public in maintaining the integrity of the police force with the interest of the police officer in receiving fair treatment. (*Pasadena Police Officers Assn.* v. *City of Pasadena, supra*, 51 Cal.3d at p. 568.)

■ The parties dispute the applicability of section 3303, subdivision (c) to the present case. The City argues the subdivision does not apply because the case involves a commanding officer's routine questioning concerning the activities of an on-duty officer, excluded from the scope of the statute by section 3303, subdivision (i).

Section 3303 provides in pertinent part: "When any public safety officer is under investigation and subjected to interrogation by his or her commanding officer, or any other member of the employing public safety department, that

[2] A public safety officer is defined as an officer specified in sections 830.1, 830.2, 830.3, 830.31, 830.32, 830.33 except subdivision (e), 830.34, 830.35 except subdivision (c), 830.36, 830.37, 830.38, 830.4, 830.5 of the Penal Code. (Gov. Code, § 3301.)

could lead to punitive action, the interrogation shall be conducted under the following conditions. For the purpose of this chapter, punitive action means any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment. [¶] (c) The public safety officer under investigation shall be informed of the nature of the investigation prior to any interrogation."

The City does not dispute that Lieutenant Martinez was Officer Labio's supervisor and that he questioned Officer Labio on matters which could lead to punitive action. Nevertheless the City argues that section 3303, subdivision (i) takes the questioning out of subdivision (c), which provides for informing this officer of the nature of the investigation.

Section 3303, subdivision (i) states: "(i) Upon the filing of a formal written statement of charges, or whenever an interrogation focuses on matters that are likely to result in punitive action against any public safety officer, that officer, at his or her request, shall have the right to be represented by a representative of his or her choice who may be present at all times during the interrogation. The representative shall not be a person subject to the same investigation. The representative shall not be required to disclose, nor be subject to any punitive action for refusing to disclose, any information received from the officer under investigation for noncriminal matters. [¶] This section shall not apply to any interrogation of a public safety officer in the normal course of duty, counseling, instruction, or informal verbal admonishment by, or other routine or unplanned contact with, a supervisor or any other public safety officer, nor shall this section apply to an investigation concerned solely and directly with alleged criminal activities."

Tracking the language of section 3303, subdivision (i), the City characterizes Lieutenant Martinez's questioning of Officer Labio as a routine contact within the normal course of duty.

■ Officer Labio argues section 3303, subdivision (i) does not modify the entire section. We disagree. The paragraph at issue begins with the words "This section," not "this subdivision." "While we may grant in some instances the word 'section' . . . *may* mean 'subdivision,' in other instances such an interpretation would be absurd." (*People* v. *Castro* (1985) 38 Cal.3d 301, 310 [211 Cal.Rptr. 719, 696 P.2d 111].) There is no indication that the paragraph relates only to subdivision (i), rather than to the entire section as it states.

■ The issue is whether Lieutenant Martinez's questioning of Officer Labio constituted routine or unplanned contact within the normal course of

duty. We conclude the trial court reached the correct result that the questioning can only be characterized as part of an investigation of Officer Labio for sanctionable conduct.

 Based on our reading of the statutory scheme, we conclude that the second paragraph of section 3303, subdivision (i) is intended to cover innocent preliminary or casual questions and remarks between a supervisor and officer. It was included to avoid claims that almost any communication is elevated to an "investigation." The subdivision excludes routine communication within the normal course of administering the department. There probably are cases in which routine questions and remarks begin to shade into an investigation to which subdivision (i) does not apply. We need not decide just where that point is reached because it is clear that under our test an investigation was underway in this case.

Lieutenant Martinez checked the deployment logs to determine which officer on duty matched Mr. Chau's description. The only one who did was Officer Labio. Sergeant Hoffman went to Dough Boy's and questioned an employee, saying that he heard that an officer may have left a ticket book there. The sergeant heard that a Filipino officer—apparently Officer Labio—had indeed been there at the pertinent time. Sergeant Hoffman reported all of this to Lieutenant Martinez. Lieutenant Martinez spoke to Officer Labio's direct supervisor and learned that Officer Labio did not have permission to use a City vehicle.

Lieutenant Martinez then proceeded to question Officer Labio. By this time, Lieutenant Martinez had enough information that, as he said, he could have arrested Officer Labio for a felony offense if this conduct amounted to a crime of that grade. Lieutenant Martinez was investigating violations of duty: driving past the scene of a serious accident without stopping to investigate or render aid, and unauthorized use of the police vehicle.

The City argues that notwithstanding the clear investigative nature of the questioning by Lieutenant Martinez, the Legislature intended that section 3303 apply only to investigations conducted by internal affairs units. There were indications that the Legislature was particularly concerned with investigations conducted by such units,[3] but we could only accept the narrow reading of the statute urged upon us by the City if we were to rewrite the law.

---

[3]For example one comment by the Senate Judiciary Committee, citing arguments of proponents of the bill, stated, "Internal investigative units within some police departments in the state are guilty of gross abuses of power, including unlawful searches and seizures, and removal of officers from their homes for interrogation." (Sen. Com. on Judiciary, analysis of Assem. Bill No. 301 (1975-1976 Reg. Sess.) as amended June 4, 1975.)

The terms "internal affairs department," or "internal investigative unit," or their equivalent do not appear in the Act. Instead the Legislature chose broad language: "When any public safety officer is under investigation and subjected to interrogation *by his or her commanding officer, or any other member of the employing public safety department* . . . ." (§ 3303, italics added.) The Legislature then exempted communication within the "normal course of duty, counseling, instruction, or informal verbal admonishment, or other routine or unplanned contact with a supervisor or any other public safety officer . . . ." It did not manifest any intent to have section 3303 apply solely to internal affairs units.

The legislative history provides additional indications of intent to extend protection to investigations conducted outside of the internal affairs department. The second paragraph of section 3303, subdivision (i) currently states, "[t]his section shall not apply to any interrogation of a public safety officer in the normal course of duty, . . ." It was previously stated in subdivision (h), "[t]his section shall not apply to any *investigation or interrogation* of a public officer in the normal course of duty. . . ." (Assem. Bill No. 301 (1975-1976 Reg. Sess.) § 1, italics added.) Deleting the word "investigation" suggests that the Legislature intended that the statute apply to investigations of a public safety officer by a supervisor, but that interrogation in the normal course of duty be exempt from procedural constraints.

Further, if the statute applied only to internal affairs units, the second paragraph of section 3303, subdivision (i) would be superfluous. Routine communication or interrogation in the normal course of duty would necessarily have been outside the scope of a section that applies only to internal affairs communications.

More fundamentally, the City's position is contrary to the legislative purpose of the Act to protect police officers from abuse or arbitrary treatment. (See *Pasadena Police Officers Assn.* v. *City of Pasadena, supra,* 51 Cal.3d at p. 576.) If an officer under investigation for a violation of law or department rules could be interrogated by his commanding officer outside the procedural protections of the Act, the protections afforded to police officers in the Act would be eviscerated.

The City next contends that cases construing section 3303 generally concern off-duty conduct and should not be applied to an investigation concerning on-duty conduct. Although some cases do address off-duty conduct, others review the conduct of officers while on duty. (See *Williams* v. *City of Los Angeles* (1988) 47 Cal.3d 195 [252 Cal.Rptr. 817, 763 P.2d 480]; *Lybarger* v. *City of Los Angeles* (1985) 40 Cal.3d 822 [221 Cal.Rptr. 529,

710 P.2d 329]; *Baggett* v. *Gates* (1982) 32 Cal.3d 128 [185 Cal.Rptr. 232, 649 P.2d 874].) The City cites no authority supporting a construction that would thus limit the Act, and we find no justification to rewrite the statute or restrict it in that way.

## III

Section 3303 does not specify a remedy for violation of its provisions. Instead, remedies are addressed by section 3309.5. Subdivision (c) of that section provides: "In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer."

Although the trial court has broad discretion in fashioning a remedy, "the relief rendered must be 'appropriate.'" (*Williams* v. *City of Los Angeles*, *supra*, 47 Cal.3d at p. 204.) We may intervene only if there has been an abuse of discretion. (*Gertner* v. *Superior Court* (1993) 20 Cal.App.4th 927, 930 [25 Cal.Rptr.2d 47].)

In *Williams*, our Supreme Court indicated factors to consider when determining the propriety of suppression as a remedy under section 3309.5. (*Williams* v. *City of Los Angeles*, *supra*, 47 Cal.3d at p. 205.) The court held that suppression is not appropriate when the officer whose right was violated was not prejudiced and suppression is not likely to deter future violations of the Act. (*Id.* at p. 204.) In *Williams*, suppression was not an effective deterrent because other incentives to avoid the specific violation in that case were already in place. (*Ibid.*) Although the *Williams* court did not find suppression appropriate in that particular case, it noted that suppression may be an appropriate remedy in other cases. (47 Cal.3d at p. 202.)

In *Hanna* v. *City of Los Angeles* (1989) 212 Cal.App.3d 363, 367 [260 Cal.Rptr. 782], the court held suppression was warranted as a remedy for multiple violations of section 3303. The violations included denial of the police officer's request for representation, denial of access to a tape recording of his first interrogation prior to his second interrogation, and denial of access to investigative reports.[4] (212 Cal.App.3d at p. 370.) The investigators also disregarded the officer's procedural rights in an effort to expedite

---

[4]To the extent that the *Hanna* court's holding was based on the fact that the officer was not given access to investigative reports, it was overruled by *Pasadena Police Officers Assn.* v.

the investigative process before the officer received tenure. (*Id.* at p. 371). The court concluded that these multiple violations may have affected the content of the officer's statements because the officer may have been " ' "too fearful or inarticulate to relate accurately the incident being investigated, or too ignorant to raise extenuating factors" ' [citation] . . . ." (*Id.* at p. 374.) In addition, having a representative present and a recording made of the interrogation may have helped the officer to support his position, as the court also found that the investigators' version of the officer's statements may have been affected. (*Ibid.*) Consequently, the court held suppression of the statements was warranted. (212 Cal.App.3d at p. 375.)

█ In 1994, subsequent to both the *Williams* and the *Hanna* decisions, the Legislature revised section 3303 by adding subdivision (f). That subdivision provides: "No statement made during interrogation by a public safety officer under duress, coercion, or threat of punitive action shall be admissible in any subsequent civil proceeding." Subdivision (f) is subject to several qualifications, only one of which is argued here. Subdivision (f)(3) states: "This subdivision shall not prevent statements made by a public safety officer under interrogation from being used to impeach the testimony of that officer after an in camera review to determine whether the statements serve to impeach the testimony of the officer."

We review the record to determine whether there is a reasonable basis for suppression in the present case. Unlike the officer in *Hanna*, Officer Labio did not request representation, nor did he ask to have the proceedings tape recorded. But he might well have invoked both those rights, as he later did, had he been informed he was under investigation. In addition, suppression in this case may serve a deterrent effect. Unlike in *Williams*, in this case no other deterrent exists. We conclude that the trial court did not abuse its discretion insofar as it ordered suppression of Officer Labio's statement from the City's case-in-chief.

█ We next consider whether the statements should be admitted for impeachment. The City points out that in a criminal case statements of a defendant obtained in violation of *Miranda* v. *Arizona, supra,* 384 U.S. 436, while precluded from the People's case-in-chief, are allowed for impeachment. (See *People* v. *May* (1988) 44 Cal.3d 309 [243 Cal.Rptr. 369, 748 P.2d 307]; *People* v. *Moore* (1988) 201 Cal.App.3d 877 [247 Cal.Rptr. 353].)

---

*City of Pasadena, supra,* 51 Cal.3d 564. In *Pasadena Police Officers Assn.,* the California Supreme Court interpreted section 3303, subdivision (f) (currently section 3303, subdivision (g)) to mean that an officer is not entitled to preinvestigative discovery. Thus the officer in *Hanna* would not have been entitled to the investigative reports. (See *Pasadena Police Officers Assn.* v. *City of Pasadena, supra,* 51 Cal.3d at p. 568.) Nevertheless, the *Hanna* court found suppression appropriate based on multiple violations.

Excluding Officer Labio's statements for impeachment would put the governmental employer in a worse position than the prosecution in a criminal case. It also would allow the officer to present evidence without fear of contradiction by his own words. We see no basis for such a rule. It certainly would be contrary to the Legislature's intent to reduce the extent of protection afforded in the administrative setting as compared to the criminal setting. (See *Pasadena Police Officers Assn.* v. *City of Pasadena, supra*, 51 Cal.3d at p. 572.)

The 1994 amendment to section 3303 adding subdivision (f) supports the conclusion that the statements should be admitted for impeachment. Section 3303, subdivision (f)(3) applies to civil proceedings. It specifies exceptions to the rule that statements obtained under duress, coercion, or threat of punitive action are excluded. Although the order under review in this case is a special proceeding under section 3309.5, rather than a civil action, it is inconsistent to admit statements obtained under coercion for impeachment while excluding statements gathered without informing the officer of the nature of the investigation. We conclude the trial court abused its discretion to the degree that its order excludes the statements from being introduced as impeachment at the administrative hearing. Of course, the admissibility as impeachment will depend on whether the statements satisfy the requirements for such evidence as well as other standard rules governing admissibility of evidence at an administrative hearing of this kind.

## IV

Finally, Officer Labio seeks attorney's fees under Code of Civil Procedure section 1021.5, which allows a court to award attorney's fees if "(a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

Although Officer Labio requested attorney's fees in the trial court, the court did not address the issue. We infer from its silence that it determined attorney's fees were not warranted. We review that decision for abuse of discretion. (*Satrap* v. *Pacific Gas & Electric Co.* (1996) 42 Cal.App.4th 72, 77 [49 Cal.Rptr.2d 348].) We find no abuse of discretion. Officer Labio did not establish an important right that benefited a large class of persons. Instead, he sought to exercise a right already established for his personal benefit.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to modify its order to allow the City to use statements at the administrative hearing for the limited purpose of impeachment if otherwise relevant. Real party shall have his costs in this proceeding.

Hastings, J. , and Baron, J., concurred.

Petitioner's application for review by the Supreme Court was denied December 17, 1997.