[No. B199810. Second Dist., Div. Six. Sept. 29, 2008.]

CINDY PEREZ, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

COUNSEL

Diane Marchant for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Claudia McGee Henry, Assistant City Attorney, and Gregory P. Orland, Deputy City Attorney, for Defendants and Appellants.

OPINION

YEGAN, J.—Following a hearing before a police board of rights (Board), Cindy Perez (appellant) was terminated as a Los Angeles police officer. The Board found her guilty on five counts of misconduct. Appellant filed a petition for a writ of administrative mandate seeking reinstatement. The trial court ordered the issuance of a writ of mandate compelling the chief of police and the City of Los Angeles (respondents) to set aside the Board's guilty finding on count 5 of the complaint. It denied the petition as to the other counts and remanded the matter to the Board for reconsideration of the appropriate penalty. Both parties appeal.

Appellant contends that the trial court erroneously refused to suppress the evidence supporting count 2. Respondents contend that the trial court erroneously suppressed the evidence supporting count 5. We affirm.

### The Complaint

The five-count complaint against appellant charged her with the following misconduct: count 1—pointing a loaded firearm at Officer Elizabeth King; count 2—pointing a loaded firearm at Sergeant Andrew Chase; count 3—inappropriately conducting "gun retention training [and] employing improper techniques"; count 4—attempting to dissuade Officer King "from reporting that [appellant had] employed improper techniques while training her"; count 5—conducting "an inappropriate training exercise when [appellant] returned a knife to an arrestee's pocket and subsequently directed Officer [Adam] Kownacki to search the arrestee."

*Facts*[1]

On December 28, 2003, appellant was working with and training Officer King, a recent graduate of the police academy. Appellant believed that King had allowed a suspect to get too close to her. Thereafter, she pulled out her loaded firearm and pointed it at King's "head and neck area." The barrel of the firearm was approximately two to three feet away from King's neck. The firearm was cocked and appellant's finger was on the trigger. Appellant said: "[T]his is how fast a suspect can come up on you and pull a gun out and shoot you." (Count 1.)

Immediately after the above incident, appellant reholstered her weapon and said that she was "going to do weapon retention training." Appellant grabbed King's firearm and tried to remove it from the holster. King slapped her hand on top of appellant's hand, turned around, and touched appellant's elbow. This was the technique that King had been taught at the police academy. Appellant said: "[T]hat's not how it's done. Let me show you." At appellant's direction, King tried to remove appellant's firearm from the holster. Appellant "smacked [King's] hand and stepped on [her] right foot and elbowed [her in the] stomach . . . ." (Count 3.)

After the weapon retention training, appellant told King, "[O]h, and this doesn't go anywhere. Don't tell anyone." (Count 4.)

Lieutenant Lydia Diaz discussed the above incidents with King. She then ordered appellant to come to the station. When appellant arrived, Diaz and Sergeant Andrew Chase interrogated her inside an office. Diaz asked appellant how she had pointed her firearm at King. Appellant said, "I did this," and she pulled out her loaded firearm and pointed it at Chase "[b]etween [his] lower stomach and [his] chin." Chase was approximately three and one-half to four feet away from appellant. In no uncertain terms, Diaz told appellant to reholster her weapon. Appellant did so. (Count 2.)

On December 31, 2003, appellant searched a handcuffed and intoxicated arrestee at the police station. She found a knife, which she surreptitiously returned to the arrestee's pocket. Appellant then directed her partner, Officer Kownacki, to search the arrestee. She wanted to know if Kownacki "could find it [the knife]." He found the knife inside "a front pocket on [the arrestee's] chest." While being interrogated at the station by Diaz and Chase, appellant disclosed the knife incident. But for the interrogation respondents

---

[1] We summarily recite the relevant facts as credited by the Board. We do observe, however, that appellant denied ever removing her firearm from her holster in connection with training Officer King. She admitted drawing her firearm from its holster at her interrogation but denied pointing it at Sergeant Chase.

would never have learned of the incident. Kownacki did not know that appellant had previously found the knife. (Count 5.)

*Suppression of Physical Misconduct During an Investigation*

Appellant's appeal concerns only count 2 of the complaint: pointing her loaded firearm at Sergeant Chase during the interrogation. Appellant contends that the trial court should have suppressed the evidence supporting this count because her conduct was in response to questioning that violated the Public Safety Officers Procedural Bill of Rights Act (POBRA). (Gov. Code, § 3300 et seq.)[2] As we shall explain, the acronym POBRA is not a magic word that makes physical misconduct disappear.

■ POBRA "provides procedural guarantees to public safety officers under investigation. [Citation.]" (*City of Los Angeles v. Superior Court (Labio)* (1997) 57 Cal.App.4th 1506, 1512 [67 Cal.Rptr.2d 775].) If a public safety officer is interrogated in violation of these procedural guarantees, the trial court has discretion to "render appropriate injunctive or other extraordinary relief to remedy the violation." (§ 3309.5, subd. (d)(1); see also *City of Los Angeles v. Superior Court (Labio)*, *supra*, 57 Cal.App.4th at p. 1516; *Hanna v. City of Los Angeles* (1989) 212 Cal.App.3d 363, 371–375 [260 Cal.Rptr. 782].) "We may intervene only if there has been an abuse of discretion. [Citation.]" (*City of Los Angeles v. Superior Court (Labio)*, *supra*, 57 Cal.App.4th at p. 1516.)[3]

---

[2] All further statutory references are to the Government Code.

[3] Respondents contend that POBRA does not apply to appellant's interrogation. They rely on section 3303, subdivision (i), which provides that the POBRA safeguards do "not apply to any interrogation of a public safety officer in the normal course of duty, counseling, instruction, or informal verbal admonishment by, or other routine or unplanned contact with, a supervisor or any other public safety officer . . . ." (See *Steinart v. City of Covina* (2006) 146 Cal.App.4th 458 [53 Cal.Rptr.3d 1].)

Respondents are precluded from contesting the applicability of the POBRA safeguards. Both before the Board and in the trial court, they conceded that the POBRA safeguards applied and had been violated. " 'A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' [Citation.]" (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676 [69 Cal.Rptr.3d 888]; see also *Resource Defense Fund v. Local Agency Formation Com.* (1987) 191 Cal.App.3d 886, 894 [236 Cal.Rptr. 794] ["It is axiomatic that judicial review is precluded unless the issue was first presented at the administrative level."].)

At the beginning of the administrative hearing, the Los Angeles Police Department (Department) advocate stated: "The Department definitely concedes that the defense has a standing, compelling and colorable argument that the Government Code was not complied with in this particular case, and for that reason the Department is going to proceed in this matter without using the statements made by [appellant] during that interview." "We agree their

The trial court refused to exclude evidence of appellant's act of pointing her loaded firearm at Sergeant Chase during the interrogation. The court reasoned: "Although this action occurred during an interrogation which was conducted in a questionable manner, the remedy of suppression protects statements, not actions, and is [in]appropriate here because of the serious nature of the misconduct."

We review the trial court's POBRA ruling for abuse of discretion. (*Williams v. City of Los Angeles* (1988) 47 Cal.3d 195, 204 [252 Cal.Rptr. 817, 763 P.2d 480]; *City of Los Angeles v. Superior Court* (*Labio*), *supra*, 57 Cal.App.4th at p. 1516.) " ' "[D]iscretion may not be exercised whimsically and, accordingly, reversal is appropriate 'where no reasonable basis for the action is shown.' [Citation.]" [Citations.]' [Citation.]" (*Williams v. City of Los Angeles, supra*, 47 Cal.3d at p. 204.)

The trial court did not abuse its discretion. The exclusion of statements made by appellant provided adequate deterrence of improper interrogation. "[W]e see no appropriate deterrent value in precluding use of [evidence of appellant's physical misconduct], as that ban could not provide any additional incentive to police departments" to comply with POBRA. (*Williams v. City of Los Angeles, supra*, 47 Cal.3d at p. 204.) Neither Diaz nor Chase could have foreseen that appellant would point her loaded firearm at Chase. Appellant was asked a question which called for a verbal response. She was not asked to demonstrate with the use of a loaded firearm. By deliberately pointing her loaded firearm at Chase, appellant subjected him to a risk of great bodily injury or death. This was an independent act of physical misconduct. No police officer should be shielded from discipline for such life-threatening misconduct.

---

[Diaz's and Chase's] investigation wasn't handled properly in conformance with the Government Code." The advocate told the Board that the Department would adhere to *City of Los Angeles v. Superior Court* (*Labio*), *supra*, 57 Cal.App.4th 1506 (statements taken in violation of POBRA cannot be used in the case-in-chief but can be used for impeachment).

Based on the advocate's representations and its own research, the Board suppressed statements made by appellant during the interrogation. However, pursuant to *Labio*, it allowed the statements to be used to impeach her testimony at the administrative hearing.

In the trial court respondents noted that, at the administrative hearing, the Department had "acknowledged" that the interrogation of appellant "was improper, in violation of Government Code section 3303." Respondents stated that "the Department [had] conceded the proper remedy for this violation be exclusion of statements made during that interrogation . . . ."

In their appellate brief respondents recognize that they assumed below that the POBRA safeguards had been violated: "The parties and the Board of Rights . . . from the outset of the proceedings . . . assumed the POBRA was violated." "Subsequently, at the administrative writ proceedings, the parties and the court again mechanically presumed that the Diaz/Chase meeting was an 'illegal interrogation.' "

## *Fruit of the Poisonous Tree*

Respondents' cross-appeal concerns only count 5 of the complaint: appellant conducted "an inappropriate training exercise when [she] returned a knife to an arrestee's pocket and subsequently directed Officer Kownacki to search the arrestee." At the administrative hearing, appellant and Kownacki were called as witnesses by the Department and testified about this incident. Their testimony was the basis for the Board's guilty finding on count 5. The trial court ordered the count stricken because "there is no evidence in the record that Respondents received the information which supports this count from anyone other than [appellant] during her interrogation."

The trial court did not abuse its discretion and was not precluded from applying a "fruit of the poisonous tree" analysis as the appropriate remedy. (See, e.g., *Wong Sun v. United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407].) Section 3309.5, subdivision (d)(1) is broadly written and gives the trial court the flexibility to provide appropriate relief. Respondents conceded below that the exclusion of statements made by appellant during her interrogation was an appropriate remedy for the Department's failure to comply with POBRA. (See fn. 3, *ante.*) Thus, a reasonable basis existed for suppressing the product of those statements: appellant's and Kownacki's testimony concerning the knife incident. That incident came to light only because of appellant's statements. The deterrent effect of excluding her statements would have been defeated if the Department had been permitted to prove count 5 through appellant's and Kownacki's testimony at the administrative hearing.

## *Conclusion*

■ Appellant's training methods, however well intended, cannot be condoned. She violated two of the four cardinal rules of firearm safety: "Never allow the muzzle of your firearm to point toward anything you do not intend to destroy. Keep your finger off the trigger until your sights are aligned with the target and you have made the conscious mental decision to shoot." (CRPA Foundation, Summary of Cal. Gun Laws & Basic Safety Rules (2006) pp. 20–21.) The Los Angeles Police Department firearms safety manual is to the same effect although phrased slightly differently. "Never" means never and there are no exceptions to these rules. It is a legitimate law enforcement training technique to demonstrate how quickly a suspect can assault a peace officer with a firearm. Such a demonstration should be accomplished with something other than a loaded firearm. And, of course, it is never appropriate for a peace officer to point a loaded firearm at a fellow peace officer conducting a misconduct investigation, not even to demonstrate what happened.

The judgment is affirmed. The parties shall bear their own costs on appeal.

Gilbert, P. J., and Perren J., concurred.