Filed 10/24/13  Rubio v.  City of Hawthorne CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GUSTAVO RUBIO, | B239259 |
| Plaintiff and Appellant, | (Los Angeles Country Super. Ct. No. YC061099) |
| v. | |
| CITY OF HAWTHORNE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles Country, Stuart M. Rice, Judge.  Affirmed in part, reversed in part and remanded with directions.

Corey W. Glave for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Jeffrey C. Freedman, Adrianna E. Guzman, and Jennifer K. Palagi for Defendant and Appellant.

_____

Gustavo Rubio and Virginia Iler, officers in the City of Hawthorne's Police Department, sued the city and the police department (together, the city) for violating the Public Safety Officers Procedural Bill of Rights Act (POBRA, Gov. Code, § 3300 et seq.).[1] The city appeals from the judgment in Rubio's favor.[2] We uphold the trial court's finding of POBRA violations, but agree with the city that setting aside Rubio's suspension was not a proper remedy absent a showing of actual prejudice.

Rubio appeals from the court's findings that his removal from a special weapons and tactics team (SWAT team) did not constitute a punitive action and that the city's violations were not malicious. These findings are not in error. But the court erred in denying Rubio the opportunity to move for attorney fees under Code of Civil Procedure section 1021.5.

We affirm the judgment in part and reverse in part. On remand, the trial court shall allow Rubio to file a motion for attorney fees.


**FACTUAL AND PROCEDURAL SUMMARY**

On May 29, 2007, Hawthorne police officers responded to a robbery call at a Best Buy store. Two suspects were taken into custody. While another officer was questioning one of the handcuffed suspects, Rubio suddenly grabbed that suspect by the shoulder and placed his hands around the suspect's neck. The suspect dropped to the floor.

Sergeant Catano, who stood nearby, saw Rubio place his hands on the suspect and walked over to find out what had happened. He asked Rubio whether the suspect had tried to swallow drugs, and Rubio responded that he had not. Rubio recalled that a few minutes later Catano pulled him aside in the store, asked him to explain his use of force, and told him "he wasn't happy with what he had seen." Catano did not remember this particular conversation. Both officers remembered discussing the incident in the store

---

[1] Statutory references are to the Government Code unless otherwise indicated.

[2] The city has dismissed its appeal as to Iler, and our review of the record does not include her.

2

parking lot. Rubio's explanation was that the suspect had started talking to his accomplice, had not responded to verbal commands, and had tried to get around Rubio. Rubio had grabbed the suspect in an effort to control him. Catano was under the impression that the suspect had been rendered unconscious because his eyes were partially closed, but Rubio denied trying to "choke him out."

After hearing Rubio's explanation, Catano decided to write a supervisory complaint about Rubio's conduct. He directed Rubio to review the store's surveillance video with him and to document his use of force. The two went to the store's security office together and repeatedly watched the portion of the video that showed the use-of-force incident. Catano did not recall asking any questions, but Rubio felt he needed to explain his actions because Catano said he did not see what Rubio claimed on the tape, and disapproved of Rubio's handling of the situation.

The next day, Catano filed a supervisory complaint against Rubio, claiming the suspect had been rendered semi-conscious and characterizing Rubio's use of force as "unreasonable and not necessary to control" the suspect. In October 2007, following an internal affairs investigation based on Catano's complaint, Rubio was served with a notice of intent to suspend him without pay for 30 days.

On November 1, 2007, after a *Skelly*[3] prediscipline meeting, the chief of police issued a notice of suspension. Through his counsel, Rubio immediately appealed the suspension and requested a hearing before the city's civil service commission. The next day, Rubio's counsel was advised that the commission had a regularly scheduled meeting set for November 15, but a schedule for Rubio's hearing would be coordinated after the commission completed hearing the appeals of two other officers, Vian and Robles, who also were represented by Rubio's attorney. On December 18, the attorney inquired whether Rubio's appeal "was still being held in abeyance due to the other hearing" and was advised that the commission "remained adamant" about postponing the appeal.

---

[3] *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194.

Also in December 2007, Rubio was removed from the SWAT team. The city took the position that the removal was not a disciplinary action, and that Rubio was not entitled to notice and an administrative hearing with respect to it.

The hearing of the Vian and Robles appeals concluded more than a year later, in April 2009. At that time, Rubio's attorney again asked when Rubio's appeal would be heard, but the hearing was delayed again, this time in order to fill two vacant positions on the commission. The positions were filled by November 24, 2009. Meanwhile, in early November, Rubio served the city with notice of a tort claim, and on November 20, 2009, he filed the complaint in this case.

In relevant part, the complaint alleged that the city violated POBRA section 3304 in failing to provide Rubio with an administrative appeal for the suspension and removal from the SWAT team, and in failing to properly notify him of the removal. The complaint also alleged violations of sections 3303 and 3306.5, on the ground that Rubio had been denied access to investigative materials. The complaint requested extraordinary relief prohibiting the police department from taking punitive action against Rubio; damages, including statutory damages for malicious violations of POBRA under section 3309.5; and attorney fees.

The commission heard Rubio's appeal in April and September 2010. It found Rubio had used excessive force, but reduced his suspension without pay from 30 days to 15 days.

The case was submitted to the court without live testimony. In its December 2011 statement of decision, the court found that Rubio was denied his right to have his administrative appeal heard within a reasonable time and that the delay violated the city's municipal code. The court also found Catano interrogated Rubio in violation of POBRA and Rubio did not timely receive essential documents relevant to his administrative appeal. The court concluded Rubio's removal from the SWAT team was not punitive, the POBRA violations were not malicious, and Rubio was not entitled to statutory damages or attorney fees.

4

The court issued a writ of mandate ordering the city to adhere to the time frame for administrative hearings in its municipal code and to develop written policies and procedures for the timely delivery of information relevant to administrative appeals; prohibiting the city from imposing the discipline at issue in this appeal; and ordering the city to restore lost back pay and benefits and permanently remove evidence of the discipline from Rubio's personnel file.  The judgment ordered plaintiffs to dismiss another case, *Rubio v. City of Hawthorne* (Super. Ct., SW Dist., Los Angeles County, No. YS022551), with prejudice, because the decision in this case rendered it moot.

The city timely appealed, and Rubio cross-appealed.

## DISCUSSION

## I

As a preliminary matter, Rubio argues the city's appeal is moot because the city dismissed its appeal as to Iler and chose not to appeal from the judgment in the Vian and Robles case.  (*Vian v. City of Hawthorne* (Super. Ct., SW Dist., Los Angeles County, 2012, No. YC060661).)  All officers were granted substantially similar relief, and the city filed a return to the writ of mandate issued in the Vian and Robles case.  Rubio relies on the principle that "[a] party who voluntarily complies with the terms of a judgment, or who satisfies it by voluntary payment or otherwise, impliedly waives the right to appeal from it."  (*Ryan v. California Interscholastic Federation* (2001) 94 Cal.App.4th 1033, 1040.)  That principle does not apply since there is no indication the city has filed a return in this case or that it has complied with the portion of the judgment requiring it to set aside Rubio's suspension.  Thus, as to Rubio, the city's appeal is not moot because it presents an actual controversy for which we can grant effective relief to the city.  (See *Ebensteiner Co., Inc. v. Chadmar Group* (2006) 143 Cal.App.4th 1174, 1178.)

In California, a partial appeal from a nonseverable judgment "brings before the reviewing court all of the nonseverable portions."  (*American Enterprise, Inc. v. Van Winkle* (1952) 39 Cal.2d 210, 217.)  But "where several persons are affected by a judgment, the reviewing court will make no determination detrimental to the rights of

5

those who have not been brought into the appeal.  As to such persons, the appeal will be dismissed." (*Id*. at p. 218.)  Since the city has chosen not to proceed against Iler, this appeal will not affect her rights.  The city's appeal against Rubio is properly before us.

II

The city appeals from the court's findings that Rubio was denied an administrative hearing in violation of the city's municipal code and that he was interrogated in violation of POBRA.  It argues the court abused its discretion in setting aside Rubio's suspension.  In turn, Rubio contends his removal from the SWAT team was a punitive action under POBRA, and the city's violations of POBRA were malicious.

We review issues related to POBRA under the following well-established standards:  The trial court's factual findings are reviewed for substantial evidence.  (*Steinert v. City of Covina* (2006) 146 Cal.App.4th 458, 465 (*Steinert*).)  Issues of statutory interpretation, such as whether POBRA applies to the facts found by the trial court, are subject to independent review.  (*Id*. at p. 465.)  The remedy fashioned by the trial court is reviewed for abuse of discretion.  (*City of Los Angeles v. Superior Court* (1997) 57 Cal.App.4th 1506, 1516 (*Labio*).)

We decline Rubio's invitation to find that the record the city filed is inadequate for review since both parties have filed trial exhibits.  We find that each party has presented the facts in a manner favorable to that party's position and decline to find that the city's presentation of facts is so one-sided as to forfeit its challenge to the sufficiency of the evidence.

A. *The City's Appeal*

1. *The Delay in Scheduling Rubio's Administrative Hearing*

The court found the city violated the reasonable time frame set in its municipal code for holding an administrative hearing, the two-year delay in this case was unjustified, and Rubio did not waive his right to a timely hearing.  The city argues the claim that the city violated its municipal code was not included in the complaint, Rubio waived his rights under the municipal code, and the municipal code violation did not justify setting aside his suspension.  The city's arguments are premised on the incorrect

6

assumption that the claimed violation of the municipal code was independent of any claimed POBRA violation.

POBRA section 3304, subdivision (b) states: "No punitive action . . . shall be undertaken by any public agency . . . without providing the public safety officer with an opportunity for administrative appeal." Under POBRA section 3304.5, "[a]n administrative appeal instituted by a public safety officer under this chapter shall be conducted in conformance with rules and procedures adopted by the local public agency." For the City of Hawthorne, the rules governing administrative appeals are set out in its municipal code. Section 2.52.060 of the Hawthorne Municipal Code requires the city civil service commission to "hold a hearing" on a petition for review of a disciplinary action "within twenty days after receipt" of such a petition.

In his complaint, Rubio alleged the city had not afforded him a hearing "within a reasonable time." He cited POBRA, but did not cite the municipal code. However, references to the time frame set forth in the municipal code were made at various times during the proceeding. In his trial brief, Rubio argued he had been denied a hearing within a reasonable time, citing POBRA sections 3304, subdivision (b), and 3304.5, as well as section 2.52.060 of the municipal code. The city had sufficient notice of his claim that, by failing to schedule a hearing within this time frame, it had failed to conduct an administrative appeal in conformance with its own rules, a violation of POBRA section 3304.5.

The court's statement of decision does not mention POBRA in its discussion of the municipal code violation. But the remedy makes clear the court considered the failure to provide an administrative hearing within a reasonable time to be a violation of POBRA. The court expressly fashioned relief under POBRA, section 3309.5, subdivision (d)(1), which applies to violations of "any of the provisions of" POBRA and allows "appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature." Under that section, the court ordered the city to adhere to section 2.52.060 of its own municipal code, unless the appealing officer agrees in writing to a delay of a specified length. This remedy is

7

similar to the written waiver requirement for tolling the one-year investigation period in POBRA section 3304, subdivision (d)(2)(B). POBRA section 3309.5, subdivision (d)(1) also authorizes the court to prohibit "the public safety department from taking any punitive action against the public safety officer." Accordingly, the court ordered that Rubio's suspension be set aside. Thus, although the court referred to the officer's rights under the municipal code, those rights were relevant to this case only because they were incorporated into POBRA by section 3304.5. The penalty provision of section 3309.5, subdivision (d)(1) was triggered by the violation of POBRA rather than by the violation of the municipal code.

The two cases on which the city primarily relies to argue a waiver occurred and that Rubio's discipline should not be set aside are largely inapposite because neither involves violation of a local ordinance that also is a POBRA violation. In *Bettencourt v. City and County of San Francisco* (2007) 146 Cal.App.4th 1090 (*Bettencourt*), a police department's regulation set a 60-day time limit for the chief of police to recommend a disciplinary action. The court held that the city's failure to comply with this time limit did not require dismissal of the disciplinary proceeding since the regulation did not specify any sanction for non-compliance. (*Id*. at. p. 1102.) The court cited the general rules that a time limit is "deemed to be directory in the absence of a contrary intent" and that violation of a directory time limit does not "require the invalidation of the government action" to which the time limit applies. (*Ibid*.) The court noted that the appellant cited no authority requiring the dismissal of disciplinary charges as a sanction for violation of the time limit set in the department's regulation. (*Ibid*.)

Since the violation in *Bettencourt* did not occur in the context of an administrative appeal, POBRA sections 3304, subdivision (b) and 3304.5 did not apply and no argument was made that the violation of the police department's regulation was a violation of POBRA. Here, in contrast, sections 3304 and 3304.5 are at issue, and a violation of their provisions entitles Rubio to a remedy under section 3309.5, subdivision (d)(1). The trial court granted Rubio a remedy under POBRA, not under the municipal code, and the

8

question is whether the remedy is justified under the state statute, not under the local ordinance.

The city also relies on *Mumaw v. City of Glendale* (1969) 270 Cal.App.2d 454 (*Mumaw*). There, a local ordinance specified a jurisdictional time limit for decisions of the zoning administrator and provided a specific procedure for granting extensions with an applicant's approval. (*Id.* at p. 456.) The applicant's attorney consented to an extension in writing, but the consent was dated after the jurisdictional time limit. The court held that once the time limit expired without a proper extension, jurisdiction could not be conferred through waiver. (*Id.* at p. 458.) The city argues that because the time limit in the municipal code was not jurisdictional, it could be and was in fact waived.

The city does not address whether POBRA sections 3304, 3304.5, and 3309.5 render the 20-day time limit in the municipal code jurisdictional.

POBRA section 3304, subdivision (d) places a one-year limitation on internal investigations of officer misconduct and expressly prohibits taking any punitive action in violation of this limitation period. That is "to ensure that an officer will not be faced with the uncertainty of a lingering investigation, but will know within one year of the agency's discovery of the officer's act or omission that it may be necessary for the officer to respond in the event he or she wishes to defend against possible discipline." (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 322.) In his trial brief, Rubio argued that an officer's administrative appeal should be heard in "a reasonably prompt manner" by analogy with this express limitation on investigations.

This analogy is misleading. Generally, clear legislative intent is required to deem a time limit mandatory so as to deprive a decision maker of further jurisdiction. (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1147–1148.) While POBRA section 3304, subdivision (d) creates a one-year limitation period for completing investigations and expressly prohibits filing charges in violation of that period, no express prohibition of untimely administrative hearings is included in sections 3304, 3304.5, and 3309.5. Were such prohibition to be read into those sections by analogy with the limitation period in section 3304, subdivision (d), it

9

would in effect deprive an officer of an administrative appeal under POBRA if the local agency holds an untimely hearing. (See *Edwards v. Steele* (1979) 25 Cal.3d 406, 410 [to hold time limit for administrative decision mandatory and jurisdictional would deprive "the aggrieved party of his appeal through no fault of his own"].) We conclude that POBRA does not render the time limit in the city's municipal code jurisdictional.

If the 20-day time limit is not jurisdictional under POBRA, then, under *Mumaw*, *supra*, 270 Cal.App.2d 454, it is subject to waiver. It is undisputed that no express written waiver like the one in *Mumaw* occurred in this case. The city argues Rubio waived the time limit by acquiescing and contributing to the delay. As the trial court noted, the city cites no authority that acquiescence constitutes a waiver of an officer's right to have a timely hearing, whether under the municipal code or under POBRA. A point not supported by adequate argument or authority may be deemed forfeited. (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.)

The city assumes that acquiescence always constitutes waiver, and that an attorney may always waive the client's rights. But that is not always the case. (See, e.g., *People v. Edwards* (1991) 54 Cal.3d 787, 813 [right to jury trial not waived by acquiescence].) Moreover, the city fails to distinguish waiver in the narrow sense of an intentional relinquishment of a known right, from forfeiture or loss of a right due to failure to perform a required act. (See *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 314–315.) There is no evidence of waiver in the narrower sense, as the record does not establish that Rubio knew of the 20-day time limit and intentionally waived it, whether expressly or through acquiescence. Since the city appears to use waiver in the narrower sense, its argument is unsupported by evidence.

We also decline to find forfeiture under the circumstances, especially since the city does not clearly make that argument. The evidence shows that when Rubio's attorney was advised that Rubio's hearing would not be scheduled until after the Vian and Robles appeals were heard, he assumed the appeal was held in abeyance. The attorney did not demand that the city comply with the 20-day time limit in the municipal code, even though he occasionally asked about the status of the appeal. The record

10

indicates the commission could schedule more than one hearing at a time. Because Rubio's attorney also represented Vian and Robles, it is unclear whether it would have been practical or reasonable to hear all appeals within the 20-day time frame.

Even were we to assume that the failure to demand a hearing within 20 days forfeited the specific time limit, it did not forfeit Rubio's right to have a hearing within a reasonable time. (See, e.g., *Giuffre v. Sparks* (1999) 76 Cal.App.4th 1322, 1329–1331 [administrative appeal process established under memorandum of understanding between police union and department subject to scrutiny under section 3304 due process protections].) The record shows the Vian and Robles appeals took an inordinately long time due to scheduling problems. Hardly any of those problems were caused by Rubio's attorney, who complained to the city about the delays. Thus, while the attorney may have acquiesced in postponing Rubio's hearing until the conclusion of the Vian and Robles appeals, we cannot say that he acquiesced or substantially contributed to the protracted hearing of those appeals. At their end, the attorney asked about scheduling Rubio's appeal, but the city did not do so until it filled two vacant seats on the commission. The record shows the commission could have heard the appeal with only three or four members. The additional delay was, therefore, unjustified.

We conclude that the delay in holding a hearing on Rubio's appeal violated POBRA sections 3304 and 3304.5, and entitled Rubio to a remedy under section 3309.5. However, the delay did not automatically invalidate the civil service commission's decision to uphold the suspension after eventually holding a hearing.

   2. *Interrogation*

The trial court found that Sergeant Catano's repeated questioning of Rubio immediately after the use-of-force incident constituted an interrogation for purposes of POBRA section 3303, subdivision (i). That section provides that "whenever an interrogation focuses on matters that are likely to result in punitive action against any public safety officer, that officer, at his or her request, shall have the right to be represented by a representative of his or her choice who may be present at all times during the interrogation. . . . [¶] This section shall not apply to any interrogation of a

11

public safety officer in the normal course of duty, counseling, instruction, or informal verbal admonishment by, or other routine or unplanned contact with, a supervisor or any other public safety officer . . . ." (§ 3303, subd. (i).)  The city argues Catano's questioning of Rubio fell under the exception for routine contacts in the normal course of duty.  We disagree.

In *Labio*, *supra*, 57 Cal.App.4th 1506, the court held that an interrogation did not fall under the exception for routine contacts where, at the time it occurred, the officer's supervisor already knew the officer was subject to discipline for unauthorized use of a police car and failure to stop at the scene of a fatal accident.  (*Id*. at pp. 1510, 1514.)  In contrast, in *Steinert, supra*,146 Cal.App.4th 458, an officer was thought to have misidentifed the reason for conducting a criminal history search prompted by a victim's vandalism report by treating it as training instead of identifying it by the crime report number.  (*Id*. at p. 460.)  This was considered a minor procedural error, and the officer's supervisor discussed the problem with the officer.  During the conversation with her supervisor, the officer denied disclosing confidential information she obtained from the search to the victim.  Her statement turned out to be false, and she eventually was terminated.  (*Id*. at p. 461.)  The court held the protections of POBRA section 3303 did not apply because at the time the supervisor talked to the officer, he did not suspect her of misconduct and did not intend to punish her.  (*Id*. at p. 466.)

Here, the court credited Rubio's recollection that Catano questioned him about the use-of-force incident four separate times shortly after the incident.  The city claims there were only three conversations because the store surveillance videos do not corroborate Rubio's recollection that Catano pulled him aside from other officers in the store to talk about his use of force.  Whether there were three or four conversations, however, is not determinative.  The court concluded that the first questioning—whether Rubio believed the suspect had swallowed drugs—was a routine inquiry, after which Catano began investigating Rubio for improper use of force. The court also concluded that Catano had decided to write a supervisory complaint about the use of force before the two watched the surveillance video together.

12

The court's conclusion that Catano started investigating Rubio for use of force at the earliest after the first conversation and at the latest before the two officers watched the store surveillance video is supported by substantial evidence. Catano saw the use-of-force incident and testified that "what I observed, the level of force used was, in my opinion, unreasonable and unnecessary to control what the subject was doing." As far as he could tell, from his vantage point in the store, the suspect was not resisting. Arguably from the very beginning Catano believed Rubio's actions unjustified unless the suspect had tried to swallowed drugs. Once Rubio confirmed no drugs were involved, Catano's belief the suspect's actions did not justify the level of force used solidified. Rubio's subsequent explanations did not change that belief. Certainly by the time he decided to write a supervisory complaint, Catano was convinced Rubio had used unreasonable force.

The city argues Catano did not question Rubio during the subsequent watching of the surveillance video. But an interrogation need not be conducted through express questioning if words or actions are "reasonably likely to elicit an incriminating response." (*Rhode Island v. Innis* (1980) 446 U.S. 291, 300–301.) Catano made Rubio repeatedly watch the surveillance video in his presence, and Rubio testified he felt he needed to explain his actions in light of Catano's stated disapproval of them. Since Catano's actions and words were reasonably likely to, and did, cause Rubio to talk about his actions during the incident at a time when Catano already had decided Rubio had engaged in misconduct, an interrogation occurred, and Rubio was entitled to the protections of POBRA section 3303.

### 3. Remedy

As we have discussed, when any provision of POBRA is violated, section 3309.5, subdivision (d)(1) allows the trial court to "render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary injunction, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer." The trial court has broad discretion in fashioning a remedy under POBRA section 3309.5, but "the relief

13

rendered must be 'appropriate[.]'" (*Williams v. City of Los Angeles* (1988) 47 Cal.3d 195, 204.) A remedy is not appropriate when the officer whose right was violated was not prejudiced by the violation and the remedy is unlikely to deter future violations of POBRA. (*Id*. at p. 204.)

The only remedy the city challenges is the prohibition against taking any punitive action against Rubio as a result of the use-of-force incident, which in effect, vacated his suspension. Rubio contends the city has waived that challenge because the remedy was ordered for all POBRA violations, and the city has not appealed the court's finding of violations of POBRA, section 3303, subdivision (g), based on the untimely delivery of documents relevant to Rubio's administrative appeal.

The remedy portion of the statement of decision is somewhat unclear. The court initially states that the two-year delay and other POBRA violations compel relief under section 3309.5. It then orders relief in separate counts, some of which include additional findings: "1. The City of Hawthorne shall adhere to its ordinance which requires a hearing within 20 days . . . ." [¶] 2. The City of Hawthorne must develop written policies and procedures to ensure that all documents, transcripts, recordings and other information necessary for the officer to prepare for the administrative appeal are provided in a timely manner . . . . In these cases, the plaintiffs were not unduly prejudiced by not receiving certain documents, recordings and transcripts until and in the midst of their administrative hearings. However, there is always some prejudice associated with late discovery and this practice must not continue. [¶] 3. The responsibility for the two year delay in scheduling the administrative hearings is solely that of the defendant, City of Hawthorne. It is not reasonable that Officers Rubio and Iler's personnel status, their future with the department as well as the opportunities for advancement were held in limbo for this two year period. [¶] 4. Therefore, the court further orders that the defendants are prohibited from taking any punitive action against Officers Rubio and Iler as a result of the conduct which gave rise to the subject discipline . . . ."

The order of relief does not indicate that setting aside the discipline was a remedy for all POBRA violations. Paragraph 3, the antecedent of paragraph 4, in which the

14

discipline was effectively ordered set aside, makes findings only about the two-year delay, suggesting that the discipline was set aside solely due to the delay. But even assuming that setting aside the discipline was a total remedy for all POBRA violations, Rubio has not shown any of the POBRA violations prejudiced his administrative appeal so as to justify that remedy.

The court specifically found Rubio was not "unduly prejudiced" by the untimely delivery of necessary documents. Rubio has not appealed that finding or shown any actual prejudice from this violation. The court made no prejudice finding with regard to Catano's interrogations of Rubio on the day of the incident, and Rubio makes no showing of prejudice in that regard. There also is no showing that the delay in holding a hearing prejudiced his administrative appeal. Rubio argues only that "the lead investigators . . . could not recall key witness information and statements due to memory loss over the three years it took for Rubio to be provided" a hearing. He cites to several pages in the testimony of Lieutenant Swain, without providing any information about the significance of that testimony. The materiality of the investigator's failure to recall when he received the store surveillance video or Catano's complaint, or the exact content of conversations he had with various officers after the incident is not immediately apparent from the portions of the testimony cited by Rubio.

Setting aside the suspension serves no rational purpose without a showing that Rubio's *administrative appeal* was prejudiced by the delay. It would be speculative to assume that if the commission had held a hearing sooner, it would have vacated the suspension. Since the suspension was upheld, Rubio was not placed in any worse position by the delay. The only relief he obtained was the reduction of the length of the suspension from 30 to 15 days. Had the commission heard the case sooner, he presumably would have been entitled to collect back pay based on the 15-day reduction sooner. Setting aside the entire suspension under the circumstances is excessive.

That section 3309.5, subdivision (d)(1) allows the court to enjoin a punitive action does not mean such a remedy is appropriate in every case. As we have explained, the delay in hearing an appeal cannot be analogized to a delay in completing an investigation

15

since POBRA expressly prohibits the imposition of discipline in the latter case but says nothing about its validity in the former. A number of cases on which Rubio relies are premised on violations of the one-year limitation period for completing investigations in section 3304, subdivision (d). (See *Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064; *Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46; *Jackson v. City of Los Angeles* (2003) 111 Cal.App.4th 899.) These cases are inapposite because the delay in this case does not automatically invalidate the administrative proceeding.

Rubio also relies on cases where improper interrogations resulted in prejudice. In *Lybarger v. City of Los Angeles* (1985) 40 Cal.3d 822, an officer was terminated for insubordination for refusing to answer questions during an investigation. (*Id*. at pp. 825–826.) The Supreme Court held the termination should be set aside because the officer was harmed by the failure to advise him that his statements could not be used against him in a criminal proceeding. Had he been so advised, "he might well have elected to cooperate rather than remain silent." (*Id*. at pp. 828–829.) In *Hanna v. City of Los Angeles* (1989) 212 Cal.App.3d 363, the investigation of a probationary officer for threatening a store clerk with a gun was rushed to completion before the officer obtained tenure. His statements were ordered suppressed because both their content and the investigators' version of them were found to have been affected by the rushed investigation. (*Id*. at pp. 374–375.) The officer in *Labio*, *supra*, 57 Cal.App.4th 1506, in addition to other counts, was specifically charged with making "false and misleading statements" during an improper interrogation, and those statements were ordered suppressed. (*Id*. at p. 1511.) In *Perez v. City of Los Angeles* (2008) 167 Cal.App.4th 118, all statements about an incident that came to light during an improper interrogation were ordered suppressed. (*Id*. at p. 124.)

Rubio's reliance on these cases is misplaced. In all of them, the officers were actually prejudiced by an improper interrogation. Rubio has not shown that he was disciplined for or because of anything he said or did not say on the day of the use-of-

16

force incident. Nor has he shown how a proper interrogation would have changed the result of the investigation.

The court abused its discretion in setting aside Rubio's suspension absent evidence of prejudice. The portions of the judgment and writ prohibiting this discipline, awarding back pay and benefits, and ordering the city to remove all records of it from the personnel file are, therefore, reversed as to Rubio.

### B. Rubio's Cross-Appeal

Rubio argues the trial court erred in finding that his removal from the SWAT team was not a punitive action, and that the city did not maliciously violate POBRA.

### 1. Punitive Action

According to Rubio, he was entitled to a 30-day written notice and an opportunity to administratively appeal his removal from the SWAT team. These POBRA protections are available when an officer is subject to "discipline" or "punitive action." (§ 3304, subd. (b) & (f).) Punitive action is "any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." (§ 3303.) Except for a transfer, all actions listed in POBRA section 3303 are "per se punitive," in the sense that the agency's motivation for taking them is irrelevant. (*Otto v. Los Angeles Unified School Dist.* (2001) 89 Cal.App.4th 985, 996.)

Rubio argues that his removal from the SWAT team caused a reduction in his salary, which was a punitive action per se. But it is undisputed that his salary was unaffected, and he lost only the opportunity to receive additional income from overtime for mandatory SWAT team training and participation in SWAT team operations. Rubio cites no authority that loss of overtime is a reduction in salary under POBRA. The cases on which he relies involve the loss of "special pay," where officers were removed from special assignments that had increased their base salary. (See *McManigal v. City of Seal Beach* (1985) 166 Cal.App.3d 975, 978, 980 [officer lost "hazard pay" as result of reassignment from motorcycle to patrol car duty]; *Giuffre v. Sparks*, *supra*, 76 Cal.App.4th at pp. 1325, 1327 [county conceded on appeal that five-percent salary decrease rendered removal from SWAT team punitive].) These cases do not hold that the

17

loss of opportunity to work additional hours at the same rate of pay constitutes a reduction in salary.

In contrast, in *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836 (*Benach*), the transfer of a deputy sheriff from the sheriff's department Aero Bureau at the Long Beach Airport was deemed not punitive. (*Id*. at p. 840.) In his new position as a detective, the pilot retained the same rank and rate of pay, but was not eligible for flight duties. (*Id*. at pp. 842, 844.) He claimed he lost compensation because he was not eligible for overtime, but the court rejected that claim because he had not shown he was entitled to overtime. (*Id*. at p. 844, fn. 4.) Similarly, here, Rubio acknowledged that overtime hours, though recurrent, are not guaranteed.

Rubio also argues his removal from the SWAT team was a punitive action because it was a transfer for purposes of punishment. (§ 3303.) He was removed from the team in December 2007, after he already had been suspended for 30 days. He was told that, due to the sustained use-of-force allegations, he "would be a liability on the team." The team was advised that Rubio's removal was "in the best interest of the team." That Rubio was transferred out of the SWAT team due to the sustained allegations of misconduct does not mean that the transfer was for purposes of punishment. The city made no such representation, and the reasons it gave for the removal indicate Rubio was removed to protect the team rather than to punish Rubio.

Courts have distinguished transfers "intended to punish for a deficiency in performance" from those "intended to compensate for deficient performance." (*Benach*, *supra*, 149 Cal.App.4th at p. 844–845, citing *Orange County Employees Assn. v. County of Orange* (1988) 205 Cal.App.3d 1289.) In *Orange County Employees Assn. v. County of Orange*, a director of a juvenile center for boys was transferred to the position of director of juvenile court services without any loss of pay. (*Id*. at p. 1291.) There was evidence that such transfers were routine but also that there were concerns about deficiencies in the director's performance. (*Id*. at p. 1293–1294.) The trial court ruled, and the appellate court agreed, that the transfer of a person to a position where the

18

deficiency either will not matter or will be compensated for is not necessarily punitive. (*Id*. at pp. 1294–1295.)

In *Benach*, a deputy sheriff was transferred after an investigation of his co-workers' complaints against him did not result in a finding of misconduct. (*Benach*, *supra*, 149 Cal.App.4th at p. 842.) Relying on *Orange County Employees Assn. v. County of Orange*, *supra*, 205 Cal.App.3d 1289, the court in *Benach* held that the transfer was not punitive because his supervisor legitimately concluded the deputy sheriff's presence at the Aero Bureau "was not conducive to a cooperative, productive working relationship with approximately 30 other members of that bureau's personnel, and exercised his supervisorial discretion to make a change to address that unique circumstance to best serve the Department's needs." (*Id*. at p. 845.)

Rubio seeks to distinguish *Benach* on the ground that it did not involve an investigation resulting in a sustained allegation of misconduct and imposition of discipline, such as the suspension in this case, only to be followed by an additional punitive action—here, the removal from the SWAT team. We disagree. The gist of the *Benach* decision is that there was a valid administrative reason for transferring the deputy sheriff. Similarly here, Rubio's removal from the SWAT team was based on a valid reason—that he was a perceived liability to the team due to the sustained use-of-force charge in his file.

*Baggett v. Gates* (1982) 32 Cal.3d 128 also is instructive. There, officers working in a firearms and explosives unit were investigated for drinking on duty, shooting pellet and BB rifles inside police premises and into the streets, and mishandling explosives. (*Id*. at p. 132.) Some of the allegations were not substantiated, others were time-barred, and no formal charges could be brought against the officers. (*Id*. at p. 133.) The officers were nevertheless reassigned to lower-paying positions outside the firearms and explosives unit. (*Ibid*.) The Supreme Court found the reduction of pay to be per se punitive and observed that "'looking through form to substance,' it is evident that plaintiffs' reassignments came about because of their alleged improper prior conduct." (*Id*. at p. 141.)

19

Here, Rubio's removal from the SWAT team was not intended as punishment since he already had been punished. There is no evidence that the chief of police ordered the removal. Rather, the decision was made by the SWAT team commander for reasons having to do with protecting the city from liability rather than to impose additional discipline on Rubio. In other words, his administrative transfer, without reduction of pay grade or rank, was made to protect arrestees from excessive force and the city from liability. The removal from the SWAT team did not deprive Rubio of POBRA protections since he already had appealed the use-of-force charges. Had the charges been overturned on appeal to the civil service commission, all evidence of them would have been removed from his file, and he could presumably have reapplied to the SWAT team.

We conclude that Rubio's removal from the SWAT team was not a punitive action entitling him to additional protections under POBRA.

### 2. Malice

Rubio argues he is entitled to a statutory penalty and attorneys fees under POBRA section 3309.5, subdivision (e) because the city's violations were malicious and intentional. We agree with the trial court that he has not made the requisite showing of malice.

In the case of a malicious violation of POBRA "with the intent to injure" an officer, the officer is entitled to "a civil penalty" of up to $25,000 for each violation and reasonable attorney fees. (§ 3309.5, subd. (e).) Section 3309.5 does not define malice. Civil Code section 3294 provides for punitive damages if malice is proven by clear and convincing evidence. (§ 3294, subd. (a).) It defines malice as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (§ 3294, subd. (c)(1).) The legislative history of the penalty in section 3309.5 suggests that the Legislature contemplated a statutory penalty similar to the punitive or exemplary damages for malice provided for in Civil Code section 3294. (See Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1516 (2001-2002 Reg. Sess.), Apr. 16, 2002.)

20

Malice may be proven directly by evidence of hatred or ill will or indirectly through inferences. (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 66.) To have evidentiary value, inferences must be reasonable and "'"cannot be based upon suspicion, imagination, speculation, surmise, conjecture or guesswork."'" (*Shandralina G. v. Homonchuk* (2007) 147 Cal.App.4th 395, 411.)

Rubio argues that since there is no explanation why the POBRA violations in this case occurred, they must have occurred because of the city's desire to win the disciplinary case against him at all costs. He relies on inferences from the violations themselves and on an e-mail sent by the city manager after the conclusion of the Vian and Robles appeals. In that e-mail, the city manager expressed his disappointment in the close decisions in those use-of-force appeals (overturning one officer's discipline for excessive force by a 3-2 vote and affirming the other's, also by a 3-2 vote). His stated intent was to talk to the commissioners to get their feedback about what the city needed to do differently in presenting such cases to the commission. The city manager intended to talk to one commissioner who, at some of the hearings, appeared to be biased in favor of the officers. The city manager also contemplated proposing to the city council that officer appeals be heard by an external commission.

The city manager's e-mail lists all the actions he intended to take. It does not state or imply he would go to the length of stacking the commission in the city's favor so that no officer would win again, as Rubio suggests. Nor is there evidence supporting such an inference. While the city manager apparently felt strongly that at least two commissioners had incorrectly voted against discipline in the Vian and Robles appeals, there is no showing that those commissioners remained on the commission or that their continued presence was the reason for delaying Rubio's appeal until a full commission was composed.

Rubio's inference that POBRA violations were intentional also is speculative. He claims a wide range of violations occurred not only in his case but also in the cases of Iler, Vian, and Robles. That the city repeatedly delayed appeals or failed to timely produce documents supports the court's conclusion that it did not have proper policies

21

and procedures in place.  Additionally, since the city manager's e-mail followed the resolution of the Vian and Robles appeals, it cannot be used to explain why violations occurred in those officers' cases or why violations occurred in Rubio's case up until the end of those officers' appeals.

The showing of malice is insufficient to establish entitlement to statutory damages or attorney fees under POBRA section 3309.5, subdivision (e).

III

Rubio argues he should have been allowed to bring a motion for attorney fees under the private attorney general statute, Code of Civil Procedure section 1021.5.  He contends the trial court incorrectly ruled he did not meet the requirements of that section because his success conferred no significant benefit on the general public or a large class of people, the primary interest he sought to vindicate in this case was his own, and the financial burden for vindicating his own rights was not extraordinary.

Code of Civil Procedure section 1021.5 provides for attorney fees "in any action which has resulted in the enforcement of an important right affecting the public interest if:  (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."  Issues of statutory construction and other issues of law implicated in the determination of whether these criteria are satisfied are subject to independent review.  (*Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 391.)

As noted in *Riverside Sheriff's Assn. v. County of Riverside* (2007) 152 Cal.App.4th 414, a number of courts have allowed recovery of fees under section 1021.5 in POBRA actions.  (*Id*. at p. 421, citing cases.)  Specifically, it is well established that POBRA protects important rights and affords a benefit not only to police officers, but to the general public.  (See *Robinson v. City of Chowchilla*, *supra*, 202 Cal.App.4th at pp. 393–401; *Riverside Sheriff's Assn. v. County of Riverside* at p. 421.)  The trial court

22

erred in concluding that only Rubio and other Hawthorne police officers, but not the general public or a large class of people, would benefit from enforcing POBRA in this case.

There is no evidence that public enforcement of these rights was available, nor did the trial court rule that it was. As to the financial burden of private enforcement, the trial court was required to compare Rubio's reasonably expected financial benefits with his actual litigation costs. (See *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1215 [fee award proper unless reasonably expected financial benefits substantially exceed actual litigation costs].) The court's denial of fees was premature since Rubio had not yet made a motion for attorney fees and had offered nothing in that regard, other than a claim in his post-trial brief that the financial burden would be substantial in comparison to the expected recovery. That Rubio sought to vindicate his own financial interests is not determinative, particularly since we have concluded he is not entitled to have his suspension set aside. (See *Robinson v. City of Chowchilla*, *supra*, 202 Cal.App.4th at p. 400–401, and cases cited.)

The trial court should allow Rubio to file a proper motion for attorney fees under Civil Code section 1021.5 after judgment is entered on remand. On the evidence before it at the time of the motion, the court should perform a proper cost-benefit analysis to decide whether to award him attorney fees and in what amount. (See *Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1215; *Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 154–155; *Robinson v. City of Chowchilla*, *supra*, 202 Cal.App.4th 382, 402.)

23

**DISPOSITION**

We reverse the individual remedies provided Rubio with regard to his suspension, and the premature denial of attorney fees under Civil Code section 1021.5.  In all other respects, the judgment is affirmed.  The case is remanded to the trial court for further proceedings consistent with this opinion.

The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


MANELLA, J.


SUZUKAWA, J.